UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LACARLA MCCARTY,

                Petitioner,                Case Number 2:11-CV-15613
                                                                  Honorable Gerald E. Rosen

MILLICENT WARREN,

                Respondent.
_____/

## OPINION AND ORDER DENYING THE PETITION FOR A WRIT OF HABEAS CORPUS AND DENYING A CERTIFICATE OF APPEALABILITY

This matter is before the Court on Petitioner LaCarla McCarty's petition for a writ of habeas corpus filed under 28 U.S.C. § 2254. On June 9, 2009, Petitioner was sentenced to mandatory life imprisonment for her Kent Circuit Court conviction of first-degree murder, MICH. COMP. LAWS § 750.316. The petition claims that insufficient evidence was presented at trial to sustain her conviction. The Court finds that the state court adjudication of Petitioner's claim did not run contrary to, or involve an unreasonable application of, clearly established Supreme Court law. Therefore, the petition will be denied. The Court will also deny Petitioner a certificate of appealability.

### I. Facts and Procedural History

Petitioner's conviction arises from the October 27, 2008, smothering death of Mashonda Griffin in her home.

The evidence at trial indicated that Griffin volunteered at the New Life Tabernacle Church in Grand Rapids and handled the church's finances. In her professional life, Griffin worked in financing at a mortgage company. The church's pastor testified that Griffin would occasionally lend money to other church members.

Andrew Neal, Petitioner's live-in boyfriend, was also a member of the church and knew Griffin. Neal and Petitioner were experiencing financial difficulties. Neal decided the solution to their problems was for him to "hit a lick," or rob someone. Neal decided on Griffin as his target, and he had Petitioner drive him to her apartment. Neal smothered Griffin to death and stole items including a credit card.

Police quickly identified Neal as the killer. In a bizarre effort to cover his tracks, Neal returned to Griffin's neighborhood on the morning of October 29, 2009. He went to the door of one of Griffin's neighbors and asked for help, leading the man inside Griffin's house to show him the body. The police were summoned, and Petitioner explained that he was at Griffin's house to borrow money and found her dead. Police determined that a robbery had occurred and that among other items, discovered that Griffin's credit card had been stolen. The credit card had been used at a couple of ATM's during the early morning hours of October 28, 2008. Surveillance cameras at the ATM's recorded Neal's face attempting to use Griffin's credit card.

The prosecutor's theory against Petitioner was that she aided and abetted Neal with the knowledge that he intended to murder Griffin. To support this theory, the prosecutor presented a statement made by Petitioner to police in which she stated that Neal told her he was going to "off" someone to solve their financial problems, and that he repeated his intent to kill the victim as Petitioner drove him to the victim's residence. Details concerning Petitioner's statement will be discussed below. The prosecutor also presented evidence regarding Petitioner's actions after the murder in which she aided Neal in disposing of the clothes he wore when he committed the murder and attempted to arrange an alibi for him.

Petitioner testified in her own defense. She stated that she did not believe Neal seriously

intended to murder the victim, and she only thought he was going to try to borrow money from her.

Based on this evidence, the jury found Petitioner guilty of first degree murder under alternative theories of aiding and abetting premeditated murder and murder during the commission of a robbery. She was subsequently sentenced to mandatory life imprisonment.

Petitioner filed a claim of appeal in the Michigan Court of Appeals, challenging the sufficiency of the evidence. The Michigan Court of Appeals affirmed Petitioner's conviction and rejected the claim on the merits in an unpublished opinion. *People v. McCarty*, No. 293275, 2010 WL 4679697 (Mich. Ct. App. November 18, 2010).

Petitioner subsequently filed an application for leave to appeal in the Michigan Supreme Court, raising the same claim. The Michigan Supreme Court denied the application because it was not persuaded that the questions presented should be reviewed by the Court. *People v. McCarty*, 489 Mich. 899 (2011) (table).

## II. Standard of Review

Review of this case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Pursuant to the AEDPA, Petitioner is entitled to a writ of habeas corpus only if he can show that the state court's adjudication of his claims on the merits-

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A decision of a state court is "contrary to" clearly established federal law if the state court

arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id*. at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id*. at 410-11.

The Supreme Court has explained that "[a] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 130 S.Ct. 1855, 1862, 176 L. Ed. 2d 678 (2010)((quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam)). "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S.Ct. 770, 786 (2011)(citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id*. (*citing Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or...could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id*. "[I]f this standard is difficult to meet, that is

because it was meant to be." *Harrington*, 131 S. Ct. at 786.

Although 28 U.S.C. § 2254(d), as amended by the AEDPA, does not completely bar federal courts from relitigating claims that have previously been rejected in the state courts, it preserves the authority for a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" the Supreme Court's precedents. *Id*. Indeed, "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* (*citing Jackson v. Virginia*, 443 U.S. 307, 332, n. 5 (1979))(Stevens, J., concurring in judgment)). Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.*, at 786-787.

### III. Analysis

Petitioner claims that the evidence was insufficient to sustain her conviction. Specifically, she asserts that while evidence showed that she gave Andrew Neal a ride to the victim's house, there was insufficient evidence presented to show that she shared his intent to kill the victim or that she knew he intended to kill her. Respondent asserts that the Michigan Court of Appeals reasonably rejected the claim on the merits.

"The Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In Re Winship*, 397 U.S. 358, 364(1970). But the critical inquiry on review of the sufficiency of the evidence to support a criminal conviction is, "whether the record evidence could reasonably support

a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318 (1979). This inquiry, however, does not require a court to "ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt." Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id*. at 318-19 (internal citation and footnote omitted)(emphasis in the original).

More importantly, a federal habeas court may not overturn a state court decision that rejects a sufficiency of the evidence claim simply because the federal court disagrees with the state court's resolution of that claim. Instead, a federal court may grant habeas relief only if the state court decision was an objectively unreasonable application of the Jackson standard. See *Cavazos v. Smith*, 132 S. Ct. 2, 4 (2011). "Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold." *Id*. Indeed, for a federal habeas court reviewing a state court conviction, "the only question under *Jackson* is whether that finding was so insupportable as to fall below the threshold of bare rationality." *Coleman v. Johnson*, 132 S.Ct. 2060, 2065 (2012). This "twice deferential" standard does not permit a habeas court to engage in a fine-grained factual parsing. *Coleman*, 132 S. Ct. at 2064; *Parker v. Matthews*, 132 S. Ct. 2148 (2012).

Under Michigan law, "[in] order to convict a defendant of first-degree [premeditated] murder, the prosecution must prove that the defendant intentionally killed the victim and that the killing was premeditated and deliberate." *People v. Anderson*, 209 Mich. App. 527(Mich. Ct. App. 1995). "To establish that a defendant aided and abetted a crime, a prosecutor must show that (1) the

crime charged was committed by the defendant or some other person, (2) the defendant performed acts or gave encouragement that assisted the commission of the crime, and (3) the defendant intended the commission of the crime or knew that the principal intended to commit the crime at the time he gave aid and encouragement." *Riley v. Berghuis*, 481 F.3d 315, 322 (6th Cir. 2007), citing *People v. Carines*, 460 Mich. 750 (1999). An "aider and abettor's state of mind may be inferred from all the facts and circumstances. Factors that may be considered include a close association between the defendant and the principal, the defendant's participation in the planning or execution of the crime, and evidence of flight after the crime." *Carines*, 460 Mich. at 758. "The quantum of aid or advice is immaterial as long as it had the effect of inducing the crime." *People v. Lawton*, 196 Mich. App 341, 352 (1992).

The Michigan Court of Appeals held that the evidence adduced at trial was sufficient to convict the Petitioner of first degree premeditated murder under an aiding and abetting theory:

> We review challenges to the sufficiency of the evidence de novo. *People v. Schumacher*, 276 Mich.App. 165, 167 (2007). We must view the evidence in a light most favorable to the prosecution and determine whether a rational trier of fact could have found that all the elements of the offense were proved beyond a reasonable doubt. *Id*. This standard is deferential and requires that we "draw all reasonable inferences and make credibility choices in support of the jury verdict." *People v. Nowack*, 462 Mich. 392, 400 (2000).
>
> To be convicted of first-degree premeditated murder, the prosecution must prove the defendant intentionally killed the victim and the killing was done with premeditation and deliberation. MICH. COMP. LAWS § 750.316(1)(a); *People v. Taylor*, 275 Mich.App. 177, 179 (2007). Premeditation and deliberation may be inferred from all circumstances surrounding the killing and from the killing itself. *People v. Unger*, 278 Mich.App. 210, 229 (2008). A time span between the initial homicidal intent and the ultimate killing, sufficient to allow the defendant to take a second look, is necessary to establish premeditation and deliberation. *Id*. To establish guilt under the theory of aiding and abetting, the prosecution must prove:
>
>> (1) the crime charged was committed by the defendant or some other person, (2) the defendant performed acts or gave encouragement that

> assisted the commission of the crime, and (3) the defendant intended the commission of the crime or had knowledge that the principal intended its commission at the time that [the defendant] gave aid and encouragement.
>
> [*People v. Plunkett*, 485 Mich. 50, 61 (2010) (citations omitted).]
>
> The amount of aid or assistance given is immaterial as long as it had the effect of inducing or encouraging the crime. *People v. Palmer*, 392 Mich. 370, 378 (1974).
>
> Viewing the evidence in the light most favorable to the prosecution, we conclude that a rational jury could find beyond a reasonable doubt that defendant aided and abetted Neal in the premeditated murder of Griffin. The prosecution presented sufficient evidence that defendant assisted Neal with the murder of Griffin. On October 24, 2008, Neal told defendant he was going to kill Griffin to get money. While driving Neal to Griffin's house on October 27, 2008, Neal told defendant again he was going to kill Griffin. Defendant threw away Neal's clothes after the murder and was reluctant to cooperate with police officers during the investigation. Defendant also called a friend to try to create an alibi for Neal in the event the police interviewed the friend. When considering this evidence, a reasonable jury could conclude that defendant assisted Neal in the premeditated and deliberate murder of Griffin.

*McCarty*, 2010 WL 4679697, *1.

Having reviewed the record, this Court finds that the Michigan Court of Appeals' determination is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. The prosecution presented sufficient evidence in the form of Petitioner's statement to police to establish her guilt as an aider and abettor of the charged offense.

During Petitioner's interview with police she described the initial conversation she had with Neal regarding their financial problems and his plan to fix them:

> I was like man, I cannot be out on the streets. I can't. I need this money. He's like I got you. You will help me. You will have your rent paid. All these late bills and the shut off. . . . He's like I ain't gonna tell you, cause if I tell you you're gonna try to stop me. I was like who is it. He's like I ain't gonna tell you. I'm gonna tell you after it's done. . . . I kept nagging and nagging, cause I wanted to know what are you planning on doing. . . . tell me he's gonna off somebody, off somebody. He still

>regrets it. . . . When he said her name, I said, I'm not good with names. . . . He was like she was the one that always sat in the back of the church. . . . And was like O.K. do whatever. . . . I was like alright. You know what? You gonna do what you want to do anyways, regardless of whatever I say. Don't matter.

Dkt. 6-12, pp. 37-39.

Viewed most favorably to the prosecution, a reasonable juror could conclude beyond a reasonable doubt based on Petitioner's statement regarding this conversation that she knew Neal planned to kill the victim. Later in the statement, Petitioner described how she aided Neal by driving him to the victim's home, with knowledge that he planned to kill her:

>Detective: How did he get to her house?
>
>Petitioner: I dropped him off there. About 8:30, 9:00 o'clock I dropped him off. I went back home and I stayed at home. He came back at 10:00, 10:30. My medicine and dozed off and I woke up and he was coming through the door and like I said, I though he was across the street.
>
>Detective: What did he say when he got home?
>
>Petitioner: He didn't tell me that right off. He didn't tell me that he killed her.
>
>Detective: He told you he was gonna when you dropped him off, right?
>
>Petitioner: Yeah. He told me he was gonna do it, but.
>
>\*       \*       \*
>
>Detective: How was he going to get back? Did he tell you he was gonna take the car?
>
>Petitioner: He actually. I was supposedly going to pick him up. But like I said he came back. I'm like something ain't right. I could tell by looking at him. By the expression on his face.
>
>Detective: O.K. So all this started on Thursday. He told you he was gonna off her, right?
>Petitioner: Thursday.
>
>Detective: Right. Last Thursday? Last Friday? Something like that? O.K. To get this ten thousand dollars. He asked for a ride from you on Monday night to go off her.

Did he say how he was going to off her that night before he did it?

Petitioner: Yeah. Evidently, he was gonna put a knife to her throat.

Dkt. 6-12, p. 44.

Petitioner's statement indicated that while she was driving him to the victim's house, he repeated his intent to kill the victim, and in fact, he told her that he planned to cut her throat. Petitioner's statement to police that she knew of Neal's intent to kill, and aided him by driving him to the victim's house, clears "the threshold of bare rationality." *Coleman*, 132 S.Ct. at 2065.

Petitioner testified at trial that she did not believe Neal would really kill the victim, but it is the job of the factfinder at trial, not a federal habeas court, to resolve such evidentiary conflicts. *Jackson,* 443 U.S. at 326; *Martin v. Mitchell*, 280 F.3d 594, 618 (6th Cir. 2002); *Walker v. Engle*, 703 F.2d 959, 969-70 (6th Cir. 1983) ("A federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume — even if it does not affirmatively appear in the record — that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution."). Simply put, the jury's verdict and the Michigan Court of Appeals' decision affirming that verdict were reasonable. Habeas relief is therefore not warranted.

### IV. Conclusion

Before Petitioner may appeal this decision, a certificate of appealability ("COA") must issue. See 28 U.S.C. § 2253(c)(1)(A); Fed. R. App. P. 22(b). A COA may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a federal court rejects a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). "A

petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the claims. *Id*. at 336-37. Petitioner has not made a substantial showing of the denial of a constitutional right as to her habeas claim. Accordingly, a certificate of appealability is **DENIED**.

### V. Order

For the foregoing reasons, **IT IS ORDERED** that the petition for a writ of habeas corpus is **DENIED** and the matter is **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED**.

                            s/Gerald E. Rosen
                            Chief Judge, United States District Court

Dated: August 14, 2013

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on August 14, 2013, by electronic and/or ordinary mail.

                            s/Julie Owens
                            Case Manager, (313) 234-5135